UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JENNIFER LANE,

        Plaintiff,

        v.

GRANT COUNTY, a Washington
municipal corporation,

        Defendant.

NO.  CV-11-309-RHW

**ORDER ADDRESSING
POST-TRIAL MOTIONS**

Before the Court are Defendant's Motion to Amend Judgment and/or For A New Trial, ECF No. 127; Plaintiff's Motion for Attorney Fees and Costs, ECF No. 122, and Plaintiff's Motion for Award of Front Pay, Interest, Compensation for Tax Consequences, and Liquidated Damages Under FMLA, ECF No. 125. A hearing on the motions was held on August 29, 2013, in Spokane, Washington. Plaintiff was present and represented by Steven Lacy. Defendant was represented by Jerry Moberg.

On April 26, 2013, the jury returned a verdict finding for Plaintiff on her Family Medical Leave Act (FMLA) restoration claim, and finding for Defendant on Plaintiff's interference claim and her Washington Law Against Discrimination (WLAD) disability discrimination claim. The jury awarded Plaintiff $150,000 in back pay damages.

I.    **Defendant's Motion to Amend Judgment and/or For A New Trial**

Defendant moves the Court to enter judgment in its favor, notwithstanding the jury verdict, order a new trial on the restoration claim so that the jury can be instructed on the "key employee" defense claim, or set aside the verdict on the

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 1**

1    "Restoration" claim, and dismiss the action without any monetary award to

2    Plaintiff. In the event the Court denies its motion, Defendant asks the Court to

3    reduce the award for back pay from $150,000 to $125,435, because the record

4    does not support the back pay award.

5        **A.**    **Restoration Claim**

6        Defendant asserts the Court improperly instructed the jury on the FMLA

7    restoration claim because it "did not have a duty to restore Plaintiff to her prior job

8    as she was a 'key-employee.'"[1] *See* ECF No. 127 at 2.

9        In order to properly analyze Defendant's position, it is necessary to review

10    the proceedings of the case. On January 17, 2013, the Court entered an order

11    denying Plaintiff's Motion for Summary Judgment and granting Defendant's

12    Motion for Summary Judgment. *See* ECF No. 51. Defendant made three arguments

13    in its Motion: (1) Plaintiff was not eligible for leave because certain exemptions

14    preclude coverage under the FMLA; (2) the County's mistaken grant of leave did

15    not preclude it from challenging Plaintiff's eligibility; and (3) even if eligible,

16    Plaintiff is a "key employee" and is not entitled to reinstatement after her leave.

17    *See* ECF No. 17. In her motion, Plaintiff argued Defendant failed to follow the

18    regulations when it designated her as a "key employee" and notified her that is was

19    their intention to deny restoration. *See* ECF No. 23. The Court found the FMLA

20    applied to Plaintiff, rejecting Defendant's argument that the personal staff

21    exemption or the policymaker exemption precluded FMLA coverage. ECF No. 51.

22    In addressing Plaintiff's argument, the Court found the notice provided by

23    Defendant was adequate to provide the reasons for not restoring Plaintiff. *Id.*

24        Plaintiff asked the Court to reconsider its decision, ECF No. 54, and

25    Defendant asked the Court to strike the retaliation claim, ECF No. 56. The Court

26

27        [1]Defendant maintains the Court properly instructed the jury on the FMLA

28    interference Claim. ECF No. 127 at 2.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 2**

granted Plaintiff's Motion for Reconsideration, agreeing with Plaintiff that there was a factual issue with respect to the right to restoration claim, namely whether there was a substantial and grievous economic injury to the operations of the employer and whether there was a job to which she could return. *See* ECF No. 81.

Prior to trial, the Court filed two sets of Proposed Jury Instructions. *See* ECF Nos. 91, 97. Both sets of instructions contemplated two types of FMLA claims: an interference claim, *i.e.* using the taking of FMLA leave as a negative factor in an employment action; and a restoration claim, *i.e.* failing to restore Plaintiff to the same or equivalent position after her leave ended. The second set of Proposed Jury Instructions included four instructions specifically relating to Plaintiff's FMLA restoration claim: Instruction No. 2.1, 2.2, 2.3, and 2.5.

Instruction No. 2.3 set forth the "key employee" defense:

> Defendant asserts it did not have to restore Plaintiff to the same or equivalent position because she is a key employee, restoring her to her position would have caused a substantial and grievous economic injury, and Plaintiff elected not to return to her employment after receiving the key employee notice.
>
> A key employee is defined as a salaried employee who is among the highest paid 10% of the employees employed by the employer within 75 miles of the facility at which the employee is employed.
>
> In order to establish the Key Employee defense, Defendant has the burden to prove the following elements by a preponderance of the evidence.
>
> 1. That Plaintiff was a key employee;
>
> 2. That Defendant made a good faith determination that substantial and grievous economic injury would occur if Plaintiff were reinstated to her former job, or an equivalent position;
>
> 3. That failing to restore Plaintiff to her former job, or an equivalent position, was necessary to prevent a substantial and grievous economic injury to Defendant's operations;
>
> 4. That after Defendant made such determination, it promptly notified Plaintiff of its intent to deny restoration to the same or equivalent position, explaining the basis for its finding that substantial and grievous economic injury will result, and providing Plaintiff a reasonable time in which to return to work, taking into account the circumstances, such as the length of the leave and the urgency of the need for Plaintiff to return; and
>
> 5. That Plaintiff did not give notice to Defendant that she intended to return to work.
>
> Defendant has the burden of proving this defense by a preponderance of the evidence.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 3**

1    ECF No. 97.

2          On the morning of trial, the Court ruled on a number of pretrial items,

3    including the second set of proposed instructions. At the beginning of the hearing,

4    the Court queried whether the key employee defense applied to the facts of the

5    case, and asked whether Instruction No. 2.3 should be given, since there was no

6    dispute that Defendant could not meet the fourth element of the defense because it

7    never provided Plaintiff with a reasonable time to return to work. ECF No. 143 at

8    3. Initially, both parties indicated they wanted the Court to provide Instruction No.

9    2.3 to the jury. Plaintiff's counsel then reconsidered and the Court explained its

10   reasoning:

> My thinking was this, Mr. Lacy, and I may have to explain
> myself, but normally your client would be given the option in that
> letter to say I don't want to take Family Medical Leave, I want to stay
> in my job, and that's what that whole provision is for, and that wasn't
> included in the letter. She couldn't stay in her job. They were going to
> abolish it. So I'm wondering why they would be able to avail
> themselves of the Key Employee Defense.

15   ECF No. 143 at 5-6.

16         The Court went on to explain it believed that if the jury was given

17   Instruction 2.3, it would be appropriate to direct a verdict on that question since it

18   was uncontroverted that Defendant could not meet its burden with respect to the

19   fourth element. ECF No. 143 at 7. Plaintiff then agreed that Instruction No. 2.3

20   would not be given to the jury. *Id.*

21         The Court then queried Defendant's counsel about Instruction 2.3. Mr.

22   Moberg responded he did not think any of the Key Employee issues should be

23   offered, and also agreed that the real issue before the jury is whether Defendant

24   Grant County would have made the same decision anyway.[2] ECF No. 143 at 22.

25   _____

26         [2]This defense was set forth in Instruction 2.2, as follows:

> Defendant asserts it did not have to restore Plaintiff to
> the same or equivalent position because it would have
> terminated Plaintiff's position even if Plaintiff had not

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 4**

The Court also asked Defendant's counsel about Instruction 2.0, 2.1[3] and 2.2. Counsel stated that 2.2 was fine, but he also indicated he did not believe the Court should instruct the jury on the interference claim. ECF No. 143 at 22.

In response, the Court asked:

> You think the instruction is written right, but it shouldn't be given because of —

and counsel responded: Yes, exactly. ECF No. 143 at 23.

On April 26, 2013, the parties and the Court again discussed the jury instructions. *See* ECF No. 149. In stating its objections, Defendant indicated that it believed Instruction No. 2[4] was a correct statement of the law, but it did not

---

> taken FMLA leave. Under the FMLA, an employer does not have to reinstate an employee that has taken FMLA leave if the employer would have terminated the employee even if the employee had not taken FMLA leave. An employee has no greater right to reinstatement than if the employee had been continuously employed during the FMLA period.
> Defendant has the burden of proving this defense by a preponderance of the evidence.

ECF No. 97.

[3]Instruction 2.1 provided:

> With respect to Plaintiff's FMLA restoration claim, under the FMLA, an employee is entitled to return to the same or equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment after her leave has ended, subject to the defenses in INSTRUCTION NOS. 2.2 and 2.3. Plaintiff has the burden of proving this claim by a preponderance of the evidence. Defendant Grant County maintains it did not have to reinstate Plaintiff to her position for the reasons described in INSTRUCTION NOS. 2.2 and 2.3.

[4]Instruction No 2, as given to the jury, stated:

> The Family Medical Leave Act (FMLA) requires employers to grant to an eligible employee up to twelve weeks of unpaid leave per year because of a serious health condition that makes the employee unable to perform the functions of the position of the employee.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 5**

believe the evidence supported any FMLA claim. ECF No. 149 at 7. Defendant objected, as a technical matter, to the Court breaking up Plaintiff's claims into the two parts, namely, the interference and the failure to restore.  ECF No. 149 at 7. Upon inquiry, Defendant conceded it did not matter whether the Court presented two separate claims. ECF No. 149 at 8. At no point did Defendant indicate that it believed the Court was not correct in its statement of the law. On the contrary, Defendant specifically indicated its belief that the Court was correct in setting forth the law with respect to the FMLA claims.

The jury was not given Instruction No. 2.3, the "Key Employee" defense, and Instruction No. 2.1 was amended to take out any reference to Instruction No. 2.3. In addition, Instruction No. 2.2a was added, incorporating language from the regulation that defined "equivalent position."

Under the FMLA, an employee who has taken FMLA has the right to be restored to her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. 29 U.S.C. § 2614(a); *see also Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). The statute provides an exemption to this right to restoration. Subsection (b) permits an employer to deny restoration to eligible employees if the employee is considered a "key employee;"[5] "(A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer; (B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the

---

Plaintiff alleges that Defendant violated the FMLA in two different manners: (1) by interfering with her FMLA rights; and (2) by failing to restore her to the same or equivalent position.
ECF No. 111.

[5] A "key employee" is "a salaried eligible employee who is among the highest paid 10 percent of the employees employed by the employer within 75 miles of the facility at which the employee is employed." 29 U.S.C. § 2614(1)(b)(2).

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 6**

time the employer determines that such injury would occur; and (C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice." 29 U.S.C. § 2614(1)(b)(1).

The regulations set forth the type of notice the employer must give the key employee.[6]

29 C.F.R. § 825.219(a) provides:

> An employer who believes that reinstatement may be denied to a key employee, must give written notice to the employee at the time the employee gives notice of the need for FMLA leave (or when FMLA leave commences, if earlier) that he or she qualifies as a key employee. At the same time, the employer must also fully inform the employee of the potential consequences with respect to reinstatement and maintenance of health benefits if the employer should determine that substantial and grievous economic injury to the employer's operations will result if the employee is reinstated from FMLA leave. If such notice cannot be given immediately because of the need to determine whether the employee is a key employee, it shall be given as soon as practicable after being notified of a need for leave (or the commencement of leave, if earlier). It is expected that in most circumstances there will be no desire that an employee be denied restoration after FMLA leave and, therefore, there would be no need to provide such notice. However, an employer who fails to provide such timely notice will lose its right to deny restoration even if substantial and grievous economic injury will result from reinstatement.

29 C.F.R. § 825.219(b) provides:

> As soon as an employer makes a good faith determination, based on the facts available, that substantial and grievous economic injury to its operations will result if a key employee who has given notice of the need for FMLA leave or is using FMLA leave is reinstated, the employer shall notify the employee in writing of its determination, that it cannot deny FMLA leave, and that it intends to deny restoration to employment on completion of the FMLA leave. It is anticipated that an employer will ordinarily be able to give such notice prior to the employee starting leave. The employer must serve this notice either in person or by certified mail. This notice must explain the basis for the employer's finding that substantial and grievous economic injury will result, and, if leave has commenced, must provide the employee a reasonable time in which to return to work, taking into account the circumstances, such as the length of the leave and the urgency of the need for the employee to return.
> The FMLA provides employees with a limited right to reinstatement.

---

[6]Instruction No. 2.3 set forth the requirements contained in these regulations.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 7**

1    *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). "The right to

2    reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the

3    entitlement theory because 'the FMLA does not provide leave for leave's sake, but

4    instead provides leave with an expectation that an employee will return to work

5    after the leave ends.'" *Id.* at 778. Evidence that an employer failed to reinstate an

6    employee who was out on FMLA leave to her original (or an equivalent) position

7    establishes a prima facie denial of the employee's FMLA rights. *Id.* In a failure to

8    restore claim, the employer's intent is not a relevant part of the inquiry. *Id.*

9        In *Sanders*, the Ninth Circuit relied on the regulations to hold that it is the

10   employer's burden to show that it had a legitimate reason to deny an employee

11   reinstatement. *Id.* at 780. Similarly, in this case, the Court relied on the regulations

12   in determining that before Defendant can take advantage of the exemption set

13   forth in section 2614(b), it has a burden to show that it fulfilled the requirements

14   of 29 C.F.R. § 825.219(a) and (b). *See* 29 C.F.R. § 825.220(b)(stating that any

15   violation of the FMLA itself or of the DOL regulations constitute interference

16   with an employee's rights under the FMLA); *see also Xin Liu,* 347 F.3d at 1133.

17        The regulations are written in mandatory language. The employer *must* give

18   written notice to the employee that she was a key employee. The employer *must*

19   explain the basis for the employer's finding that substantial and grievous

20   economic injury will result. The employer *must* provide the employee a reasonable

21   time in which to return to work. Here, it is undisputed that Defendant did not

22   comply with the regulations because it never provided Plaintiff with a reasonable

23   time in which to return to work. As a matter of law then, Defendant was precluded

24   from relying on the "key employee" defense. Instead, the only defense available to

25   Defendant was the defense set forth in 29 C.F.R. 825.216,[7] and Instruction No.

26

27

28        [7](a) An employee has no greater right to reinstatement or to other benefits
and conditions of employment than if the employee had been continuously

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 8

2.2.[8]

Moreover, Defendant waived its right to object post-trial to the jury being instructed on the restoration claim. A review of the transcript reveals that Defendant agreed with the Court's determination that the key employee defense did not apply. The Court never indicated that it did not intend to not instruct the jury on the restoration claim. Specifically, there is nothing in the record that suggests any discussion or agreement that the Court would not instruct the jury with Instructions No. 2, 2.1[9] and 2.2—instructions dealing exclusively with the Restoration claim. Defendant objected to having the jury be instructed on the interference claim, but did not indicate to the Court that it believed Instruction No. 2, 2.1, or 2.2 were incorrect statements of the law, or that the jury should not be given these instructions. No where in the record did Defendant object to Instructions 2.1 and 2.2, which set forth the elements of the restoration claim and its defense.

The jury was properly instructed with respect to the FMLA restoration claim and Defendant waived any objection to the jury being instructed on the restoration

---

employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment. 29 C.F.R. § 825.216(a).

[8]*See* Footnote 2.

[9]Instruction No. 2.1 stated:

> With respect to Plaintiff's FMLA restoration claim, under the FMLA, an employee is entitled to return to the same or equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment after her leave has ended, subject to the defenses in INSTRUCTION NOS. 2.2 and 2.3. Plaintiff has the burden of proving this claim by a preponderance of the evidence. Defendant Grant County maintains it did not have to reinstate Plaintiff to her position for the reasons described in INSTRUCTION NOS. 2.2 and 2.3.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 9**

1  claim.

2      **B.    Back pay Award**

3      Defendant argues the Court should reduce the jury's back pay award to the

4  amount testified to by Plaintiff's expert, or order a new trial on the back pay

5  damages. The Court agrees. There is nothing in the record to support the jury's

6  verdict of back pay in the amount of $150,000. The only evidence in the record

7  regarding the amount of back pay came from Plaintiff's expert testimony, who

8  testified that Plaintiff's back pay losses were $125,435. In her response, Plaintiff

9  indicated she would elect to a reduction in the jury award, rather than have a new

10 trial on this issue. The Court will amend the judgment entered on April 29, 2013,

11 ECF No. 119, to reflect the amended amount of back pay.

12 **II.    Plaintiff's Motion for Attorneys' Fees and Costs**

13     Plaintiff asks for her reasonable attorneys fees and costs plus a 1.5

14 multiplier. 29 U.S.C. § 2617(a)(3) provides that in a FMLA action, the court

15 "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable

16 attorney's fee, reasonable expert witness fee, and other costs of the action to be

17 paid by the defendant." Courts have interpreted this to mean that the attorney's

18 fees provision in the FLMA is mandatory. *See Navarro v. General Nutrition*

19 *Corp.*, 2004 WL 2648373 (N.D. Calif. Nov. 19, 2004) (reviewing cases where

20 courts interpreted this provision to provide for mandatory fees).

21     Defendant concedes Plaintiff is the prevailing party and acknowledges the

22 requested rates are reasonable. Defendant asks the Court to segregate the fees

23 because Plaintiff was unsuccessful with respect to her FMLA

24 interference/retaliation claim, her Washington Law Against Discrimination

25 (WLAD) disability claim, and her breach of specific promise claim.[10]

26

27

28     [10]Before the Court finalized the jury instructions, Plaintiff indicated that she
was not going to argue this theory to the jury because the evidence has established

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 10**

The Court must use the lodestar method to determine reasonable attorneys fees under the FMLA. *Navarro*, 2004 WL 2648373 at *2.[11] The lodestar is determined by a reasonable hourly rate multiplied by the reasonable number of hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiff bears the burden of proving the reasonableness of both the hourly rate and the number of hours expended. *Id.* at 437. A plaintiff is entitled to recover attorney's fees even for claims on which she did not prevail, if they "involve a common core of facts *or* are based on related legal theories." *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1125-26 (9th Cir. 2008). Claims are related for purposes of determining attorney's fees even though they are brought on the basis of different legal theories against different defendants if the claims arose from a common core of facts. *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2008). On the other hand, a plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful claim. *Id.* A district court may reduce attorney's fees by a percentage, as long as the court sets forth clear and concise reasons for adopting this approach. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001).

Here, the Court finds that all of Plaintiff's claims arose from a common core of facts. The common core of facts involved uncovering Defendant's motivation in terminating Plaintiff. While Plaintiff did not have to prove intent with respect to her failure to restore claim, she had to defend against Defendant's claim that it

---

a defense to the theory. ECF No. 149 at 5-6.

[11]Magistrate Judge Chen noted that "[a]lthough the attorney's fee provision in the FMLA is different from the attorney's fee provisions in other civil rights statutes (*e.g.,* Title VII) because the former is mandatory and not discretionary, courts have analyzed motions for attorney's fees under the FMLA in the same way as motions for attorney's fees under other civil rights statutes. *Navarro*, 2004 WL 2648373 at *2.

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 11

would have terminated her even if she had not taken FMLA. Also, Plaintiff had to defend against Defendant's claim that it acted in good faith, which implicates Defendant's intent. Thus, Plaintiff's claims involved a common core of facts. Also, Plaintiff was successful in obtaining back pay, interest and front pay and her recovery was significant in relation to the hours reasonably expended on the litigation.[12] The Court declines to exercise its discretion to segregate Plaintiff's request for attorney's fees.

The reasonable attorney's fees calculated with the lodestar method are $92,906.50 in attorney's fees, $4,860 in expert fees, and remaining costs, $757.40.

Plaintiff asks the Court to enhance the lodestar amount. In determining whether it is appropriate to enhance the lodestar fees, the Court considers additional factors including the time and labor required, the skill requisite to perform the legal services properly, the preclusion of other employment by the attorney due to the acceptance of the case, the customary fee, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the undesirability of the case, the nature and length of the professional relationship with the client, and awards in similar cases.[13] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70

---

[12]As the Ninth Circuit explained, "Under *Hensley,* the reasonableness of a fee award is determined by answering two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *McCown*, 565 F.3d at 1103.

[13]It is presumed that the novelty and complexity of the issues are fully reflected in the number of billable hours recorded by counsel, and thus would not warrant an upward adjustment. *Blum v. Stenson*, 465 U.S. 886, 898 (1984)

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 12

(9th Cir. 1975).

The Court declines to enhance the lodestar fee. This was not an extraordinary case. While the Court wrestled with the proper application of the Family Medical Leave Act, this case was the second FMLA involving the same defendant, same counsel, same players, and same department within Grant County. It was not complex nor were the proceedings drawn out. The lodestar amount accurately represents reasonable attorney's fees.

### III. Plaintiff's Motion for Award of Front Pay, Interest, Compensation for Tax Consequences, and Liquidated Damages under FMLA

In addition to the jury award of back pay, Plaintiff is seeking additional damages in the form of front pay, interest on her past economic loss, a sum representing the tax consequences of her award, and liquidated damages.

### A.    Front Pay

Plaintiff asserts that reinstatement is not appropriate and asks the Court to award $312,000 in front pay, based on her expert's testimony that Plaintiff's future economic damages are $312,000.[14]  Defendant opposes any request for reinstatement and front pay because Plaintiff failed to mitigate her damages.

29 U.S.C. § 2617(a)(1)(B) provides that any employer who violates the FMLA  shall be liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."

Here, reinstatement is not an option because the record reflects that Plaintiff's former job or a similar or equivalent job is not available.  In its response to the Court's inquiry, Defendant offered Plaintiff a job as Administrative

---

("Neither complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award."). Enhancing a fee award on account of contingency is improper. *City of Burlington v. Dague*, 505 U.S. 557 (1992).

[14]Plaintiff's expert calculated front pay to the age of 67.

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 13

1    Assistant in the Department of Public Defense. *See* ECF No. 142. There is no
2    dispute that this position is not similar or equivalent to the position Plaintiff held
3    prior to going on FMLA and prior to being terminated. In its response to
4    Plaintiff's motion, Defendant identified a number of jobs that had become
5    available since Plaintiff's departure from Grant County. It does not appear that
6    Defendant ever offered Plaintiff these jobs, nor is there sufficient detail for the
7    Court to determine whether these jobs were similar or equivalent. The Court finds
8    as a factual matter that reinstatement to the same or equivalent position is not
9    feasible.

10        Similarly, there is nothing in the record that indicates it would be
11   appropriate to order that Plaintiff be promoted into a position.

12        Given the history of this case, then, it appears that "employment" is the only
13   remaining specifically enumerated option for equitable relief. While courts have
14   recognized that generally reinstatement is a preferred remedy, *see Traxler v.*
15   *Multnomah County*, 596 F.3d 1007, 1012 (9th Cir. 2010), no courts have
16   recognized that "employment" is preferred. Also, reinstatement may not be
17   appropriate where the plaintiff has found other work. *Arban v. West. Pub. Corp.*,
18   345 F.3d 390, 406 (6th Cir. 2003).

19        If the Court were to exercise its discretion and order "employment," that is,
20   order that Defendant provide Plaintiff with a job, equity may require the Court to
21   order front pay to make up the difference between the current job and the former
22   job if, for instance, the current job has less pay, less responsibilities, and less
23   security. In such a situation, employment plus front pay would be the monetary
24   equivalent of reinstatement to the same or similar position. Also, employment plus
25   front pay would compensate the plaintiff for wages and benefits she would have
26   received from the employer in the future if not for the FMLA violation, but
27   account for the fact that that the employment is for a different position. As a
28   practical matter, employment plus front pay may be the preferred remedy where

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 14**

1   reinstatement is inappropriate, but employment is; yet employment alone will not

2   fully compensate the employee.

3      In this case, Plaintiff proffered to the Court that the position being offered

4   by Defendant is no better option than the employment that she is currently in. In

5   addition, six years have passed since Plaintiff was last employed by Grant County,

6   and the trial record reflects animosity between the parties. In this situation, it

7   would not be equitable to force Plaintiff to take a job that would put her in no

8   better position than she currently is in and which she enjoys. However, equity

9   demands that Plaintiff be awarded some type of front pay to compensate her from

10   the difference between her current employment options (the WSU position or the

11   Grant County position) and the position she would have held but for Defendant's

12   failure to restore her after she returned from leave.

13      The question then is what is the amount of front pay that Plaintiff is entitled

14   to receive. Most courts have considered front pay in relationship to claims under

15   the ADEA, Title VII, and the ADA. In these case, courts have considered several

16   factors when determining the propriety of an award of front pay: (1) an employee's

17   duty to mitigate; (2) the availability of employment opportunities; (3) the period

18   within which one by reasonable efforts may be re-employed; (4) the employee's

19   work and life expectancy; (5) the discount tables to determine the present value of

20   future damages and other factors that are pertinent on prospective damage awards,

21   *Arban v. W. Pub. Corp.*, 345 F.3d 390, 406 (6th Cir. 2003); (6) the length of prior

22   employment, (7) the permanency of the position held, (8) the nature of the work,

23   (9) the age and physical condition of the employee, (10) possible consolidation of

24   jobs, and (11) the myriad other non-discriminatory factors which could validly

25   affect the employer/employee relationship. *Downey v. Strain*, 510 F.3d 534, 544

26   (5th Cir. 2007). As the Ninth Circuit noted, "The purpose of front pay . . . is to

27   ensure that a person who has been discriminated against . . . is made whole, not to

28   guarantee every claimant who cannot mitigate damages by finding comparable

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 15**

1  work an annuity to age 70." *See Gotthardt v. National R.R. Passenger Corp.*, 191

2  F.3d 1148, 1157 (9th Cir. 1999) (*quoting Anastasio v. Schering Corp.*, 838 F.2d

3  701, 709 (3rd Cir. 1988).

4  Here, at the hearing, both parties seemed to agree that the position offered

5  by the County was at least $20,000 less than she would have been making if she

6  continued to work at Grant County in an administrative capacity.[15] On September

7  4, 2013, Plaintiff filed a Declaration stating recently she was offered a full-time

8  job making $3,377, which is $3,041 less per month than she was making when she

9  was employed by Grant Count.[16] *See* ECF No. 148. Based on the record before the

10  Court, front pay in the amount of $30,000 per year is equitable to compensate

11  Plaintiff.

12  The more difficult question is determining the number of years for which

13  Plaintiff should receive this amount. As set forth above, Plaintiff is seeking front

14  pay until she is age 67. At the hearing, Defendant suggested that if front pay was

15  appropriate, it should be between one and three years.

16  Front pay is intended to be temporary in nature. *Cassino v. Reichhold*

17  *Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987). The longer the period of

18  front pay, the more speculative the damages become. *Peyton v. DeMario*, 287 F.3d

19  1121, 1128 (D.C. Cir. 2002). Because of the potential for windfall on the part of

20  the Plaintiff, the amount and use of front pay "must be tempered." *Gotthardt*, 191

21  F.3d at 1157 (*quoting Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991).

22  After carefully considering the factors set forth above, the Court finds two

23  ————————————

24  [15]The monthly salary for the Administrative Assistant position with the

25  Department of Public Defense is $3,859.00. *See* ECF No. 142. In her response to

26  the County's offer, Plaintiff indicated that she was making in excess of $70,000 a

27  year, plus full benefits when she was on leave. ECF No. 144.

28  [16]It appears that Plaintiff made $6418 ($3,377 + 3,041) per month as PARC

director.

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 16

years is an adequate time period to compute the front pay award, rather than to the age of 67 as Plaintiff requested. *See Traxler*, 596 F.3d at 1014 (finding the district court did not abuse discretion in limiting front pay to roughly three years of salary and benefits, where the district court relied on the fact that there may be some disparity in the earning capacity for a period of time, but the employee was young and had good job skills). In *Traxler*, the district court found it unreasonable to assume that the plaintiff, a county employee, would be unable to find a comparable position for the rest of her life. *Id.* The Court makes the same assumption in this case.

Two years is adequate time to give Plaintiff the opportunity to obtain a comparable salary and position as she had before she was terminated and reflect the historically low labor markets that are currently on the upswing.[17] Also, two years takes into account Plaintiff's age and her ability to continue to work, but also reflects the fact that it took her additional time to secure full-time employment at a lower salary. However, a front pay award in excess of two years would be unduly speculative.[18] The record suggests that the County was continually looking at ways to reorganize its programs and services. Indeed, testimony at trial revealed

---

[17]At trial, Defendant's expert, Dr. David Knowles, testified that the labor markets for the last three or four years have been historically slow. ECF No. 134 at 8. In his declaration, Dr. Knowles stated that Grant County has been posting stronger employment gains, with a significant drop in unemployment rates. ECF No. 138 at 4.

[18]At trial, Dr. Knowles believed that Plaintiff would be able to obtain comparable employment in one to two years, given the severe economic times and the fact that she lived in a rural area. ECF No. 134 at 24-25. In his declaration, Dr. Knowles stated that a four year period is "an extraordinary lengthy time period for a worker to be able to garner an acceptable alternative employment opportunity for an individual with Ms. Lane's work experience." ECF No. 138 at 4.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 17**

that the person who was placed in one of the newly created position as a result of the merger was subsequently demoted to another position.[19] Additionally, Plaintiff received back pay from September 22, 2009 to April 26, 2013, a period of nearly four years. An additional two years of front pay gives Plaintiff roughly six years to mitigate her damages, which is consistent with the case law and is appropriate given the facts of this case.

Consequently, the Court awards Plaintiff front-pay of $30,000 a year for a period for two years for a total award of $60,000 in front pay.

**B.    Pre-judgment Interest**

Under the FMLA, an employee is entitled to interest, "calculated at the prevailing rate," on the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation." *See* 29 U.S.C. § 2617(a)(1)(A)(ii). Pre-judgement interest on FMLA damages is mandatory, not discretionary. *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 302 (9th Cir. 2009). The FMLA does not define the term "prevailing rate." District courts have exercised their discretion to find different methodologies of calculation appropriate in different contexts. *See Bell v. Prefix, Inc.*, 2012 WL 4069589 (9th Cir. 2012)(listing cases applying the state statutory rate, section 1961(a) rate, or the prime rate). Recently, Judge Suko of the Eastern District of Washington applied the "prime rate" in awarding prejudgment interest in a FMLA claim.[20] *See Gutierrez v. Grant County*, CV-10-48-LRS, 2011 WL 5279017 at *2

---

[19]The jury did not find that the taking of FMLA leave was a motivating factor in the decision to terminate Plaintiff. Rather, the jury verdict indicates the jury believed that the FMLA required Grant County to transfer Plaintiff to one of the new positions created as a result of the merger.

[20]The prime rate is the rate that banks charge for short-term unsecured loans to credit-worthy customers. *Forman v. Korean Airlines Co., Ltd.*, 84 F.3d 446, 450

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 18

(E.D. Wash. Nov. 2, 2011). In doing so, Judge Suko considered the compensatory purpose of prejudgment interest and the historical reduction of interest rates while that case was pending. *Id.* The Court adopts the reasoning of Judge Suko.

The current "prime rate" is 3.25%. The Court will apply a 3.25% interest rate from the date of Plaintiff's termination to the date of final judgment, which is the same as the date of this order.[21]

### C.    Damages for Tax Consequences

Plaintiff asks the Court to award her the equitable relief of damages for the tax consequences of receiving her back pay as a lump sum.[22] Defendant asserts

_____

(D.C. Cir. 1996).

[21]The Court calculated the interest as follows: $125,435 x .0325 = $4,076.64 per year. Plaintiff was terminated on September 22, 2009. Thus, interest would accrue at $4,076.64 per year for the time periods of 9/22/2009-9/21/2010, 9/22/2010-9/21/2011, and 9/22/2011-9/21/2012, which equals $12,229.92 ($4,076.64 x 3), and would accrue at $11.17 a day for the time period of 9/22/2012 to 9/19/2013, which equals $4,054.71 (11.17 x 363). The total pre-judgment interest is $16,284.63.

[22]This has been described in the literature as "grossing up." *See* Thomas R. Ireland, *ante.* As Mr. Ireland explained, the goal of "grossing up" is to account for the extra taxes that will be owed by an award recipient in the year an award for past and future lost income is paid. Because awards for past and future loss income due to wrongful termination will be taxed in the year paid based on tax rules for that year, under progressive income tax structures, lump sum awards will cause more taxes to be paid than would have if the termination had not occurred and income had been paid in the years in which the income was earned. The term "gross-up," then, refers to calculating award amounts such that the award winner will have the same after tax net income that the award winner would have had if

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 19**

there is no federal authority for increasing the damages amount to offset her tax consequences.

It is true that federal circuits are not in agreement with respect to whether or not "gross-up" tax adjustments should be made. *See* Thomas R. Ireland, *Tax Consequences of Lump Sum Awards in Wrongful Termination Cases*, 17-Oct. J. Legal Econ. 51, 53 (2010)(noting that the Third and Tenth Circuit have held that gross-ups should be made, while the D.C. Circuit has stated in very definite terms that gross-ups should not be made.)

Here, Rick Linder, Plaintiff's expert, was asked to provide the pre-tax equivalent for Plaintiff's jury award. He stated the pre-tax equivalent of Plaintiff's jury award of $150,000 is $214,300, the difference being $64,300. Mr. Linder did not provide his methodology for arriving at this figure. *See id.* at 51 (identifying at least three difference methods for "grossing up" an award for back pay). For instance, it is not clear if this figure was "grossed down" to account for a possible reduction in Social Security taxes. Notably, in his article, Mr. Ireland concluded that any calculation for a gross-up is likely to be a "rough and ready" calculation and is complicated.[23] *Id.* at 62. Without any methodology, the Court cannot

_____

the termination had not taken place. On the other hand, because Social Security payroll tax is a regressive tax on active income, it may be appropriate to "gross-down" an award due to the net decrease in Social Security taxes that would result from a lump sum payment.

[23]Mr. Linder's numbers are suspect for another reason. In *Eshelman v. Agere Systems, Inc.*, the Third Circuit affirmed the district court's decision to award an additional $6,893.00 as compensation for the negative tax consequences of receiving a lump sum back pay award. 554 F.3d 426, 443 (3rd Cir. 2009). In that case, the plaintiff was awarded $170,000 in back pay. Here, Plaintiff's expert concluded a $64,300 adjustment is necessary, nearly 10 times the amount for a

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 20

1    determine what the tax consequences would be for the reduced back pay award.

2        Given the lack of authorization from the Ninth Circuit, the split among the

3    Circuits, and the inability to properly evaluate Mr. Linder's testimony, the Court

4    declines to exercise its discretion to increase Plaintiff's damages award to account

5    for tax consequences.

6        **D.    Liquidated Damages**

7        Plaintiff is seeking liquidated damages under the FMLA.

8        The FMLA authorizes liquidated damages equal to the amount of lost wages

9    and interest. 29 U.S.C. § 2617(a)(1)(A)(iii). Once it is determined that an

10   employer violated the FMLA, liquidated damages should be awarded, unless the

11   employer proves both "good faith" and "reasonable grounds for believing that [its

12   action] was not a violation" of the FMLA. *Traxeler*, 596 F.3d at 1016.

13       In his Order, Judge Suko questioned whether Grant County acted in

14   subjective good faith in terminating Ms. Gutierrez's employment. *Gutierrez,* 2011

15   WL 5279017 at *4. Plaintiff and Ms. Gutierrez were both employees of the PARC

16   department within Grant County, both were on family medical leave around the

17   same time, and both were  terminated around the same time. *Id.* Specifically, Judge

18   Suko noted the record demonstrated that "Grant County did not exhibit such care

19   and caution even though the only two employees terminated in the merger of

20   PARC and GrIS (Plaintiff and Jennifer Lane) were both on FMLA leave when

21   their positions were eliminated." *Id.* Judge Suko indicated that at trial, Ms.

22   Heckler testified she was uncertain whether in the summer of 2009 she knew of

23   the FMLA regulations. *Id.* She thought it was likely she did some research on the

24   ────────────────

25   lower back pay award. Granted, the tax laws are complex and there may be a good

26   explanation for the discrepancy, including the beginning bracket and spousal

27   income. Nevertheless, in order for the Court to accept Plaintiff's expert's amount,

28   it would be necessary for the Court to have some explanation as to the

methodology to obtain this number.

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 21**

1   issue, but she could not remember what she found out. *Id.* Also, she could not

2   remember speaking to the county commissioners about the fact that the

3   restructuring proposal called for the layoffs of employees on FMLA leave.

4   Ultimately, Judge Suko found that even assuming that Defendant Grant County

5   acted in subjective good faith because of budgetary concerns, its conduct was not

6   objectively reasonable. *Id.*

7       At trial and throughout the post-trial briefing, Defendant has maintained it

8   did not have a duty to restore Plaintiff to an equivalent position because she was a

9   key employee and it decided to eliminate her position. However, as set forth

10  above, this is not a correct understanding of the law. Moreover, Ms. Hechler's

11  testimony at trial was different than her testimony before Judge Suko and as

12  submitted in her Declaration in opposition to Plaintiff's post-trial motions.

13  Consequently, the Court agrees with Judge Suko that Defendant did not have a

14  reasonable basis for believing its conduct was lawful.

15      Defendant has not overcome the presumption that liquidated damages

16  should be awarded to Plaintiff. Nor has it met its burden of proving that its

17  conduct was objectively reasonable. See *Cooper v. Fulton County, Ga,* 458 F.3d

18  1282, 1287 (11th Cir. 2006) (employer's conduct not reasonable where court

19  administrator had never consulted the FMLA or its implementing regulations,

20  personnel director had not read the statute or regulations, and there had been no

21  consultation with an attorney). As such, the Court awards liquidated damages

22  pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

23      Accordingly, **IT IS HEREBY ORDERED**:

24      1.   Defendant's Motion to Amend Judgment and/or For a New Trial, ECF

25  No. 127, is **DENIED**.

26      2.   Plaintiff's Motion for Attorney Fees and Costs, ECF No. 122, is

27  **GRANTED**.

28      3.   Plaintiff's Motion for Award of Front Pay, Interest, Compensation for

**ORDER ADDRESSING POST-TRIAL MOTIONS** ~ 22

Tax Consequences, and Liquidated Damages under FMLA, ECF No. 125, is **GRANTED**, in part.

     4.     Plaintiff's Motion in Limine, ECF No. 43, is **DENIED**, as moot.

     5.     Defendant's Motion in Limine, ECF No. 46, is **DENIED**, as moot.

     6.     Defendant's Motion to Strike Response, ECF No. 145, is **DENIED**, as moot.

     7.     Defendant's Motion to Expedite, ECF No. 146, is **GRANTED**.

     8.     The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant as follows:

| | | |
|---|---|---|
| a. | Past economic loss | $125,435.00 |
| b. | Interest on past economic loss | $ 16,284.63 |
| c. | Liquidated Damages | $141,719.63 |
| d. | Front pay | $ 60,000.00 |
| e. | Reasonable Expert Witness Fee | $ 4,860.00 |
| f. | Other Non-Taxable Costs | $ 757.40 |
| g. | Reasonable attorneys fees | $ 92,906.50 |

TOTAL JUDGMENT AWARDED TO PLAINTIFF: **$441,963.16**, together with post-judgment interest as provided by law from and after the date hereof.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, provide copies to counsel, and close the file.

**DATED** this 20th  day of September, 2013.


               *s/Robert H. Whaley*
               ROBERT H. WHALEY
               United States District Court

Q:\RHW\aCIVIL\2011\Lane\posttrial.wpd

**ORDER ADDRESSING POST-TRIAL MOTIONS ~ 23**